UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    -v.-<br><br>JOSE LORA,<br><br>                              Defendant. | 16 Cr. 44-5 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Jose Lora, who is currently housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), has applied for compassionate release, in the form of resentencing to the mandatory minimum term of 60 months' imprisonment, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] In support, Mr. Lora cites certain medical issues, as well as the conditions of his confinement during the ongoing COVID-19 pandemic. The Government opposes this motion. As set forth in the remainder of this Order, the Court grants in part Mr. Lora's motion.

## BACKGROUND

On June 26, 2017, Mr. Lora — a citizen of the Dominican Republic — was charged in a sealed superseding indictment with one count of conspiracy to distribute and to possess with the intent to distribute one kilogram and

---

[1] After Mr. Lora's opening submission was filed, the United States Court of Appeals for the Second Circuit clarified that "a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release." *United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). Mr. Lora did not thereafter modify his request to seek a sentence below the mandatory minimum of 60 months' imprisonment. For avoidance of doubt, this Court notes that its resolution of Mr. Lora's motion would be the same irrespective of the specific sentence adjustment that he sought.

more of heroin and five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); and one count of conspiracy to import into the United States one kilogram and more of heroin and five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(B)(ii).  (Dkt. #116).  According to Mr. Lora's Final Presentence Investigation Report (the "PSR" (Dkt. #169)), the charges arose from a Drug Enforcement Administration ("DEA") investigation into an organization that imported cocaine and heroin from the Dominican Republic into the United States.  (PSR ¶¶ 11-24).  Mr. Lora was ultimately held responsible for the distribution of at least 18 kilograms of heroin and 150 kilograms of cocaine between 2013 and 2015.  (*Id.* at ¶ 24).

Of note, the instant case was not Mr. Lora's first narcotics prosecution in this country.  Back in June 2006, Mr. Lora was arrested and charged with criminal possession of a controlled substance in the first degree in New York County Supreme Court, for which he was sentenced principally to a term of five years' imprisonment.  (PSR ¶ 41).  Mr. Lora was then removed from this country in 2010.  (*Id.*).[2]

In 2018, after the indictment in the instant case had been returned, the Government arranged for Mr. Lora's arrest in and extradition from the Dominican Republic.  (PSR p.1).  On August 13, 2019, Mr. Lora pleaded guilty to the lesser-included offense of Count One, namely, conspiracy to distribute

---

[2]   Mr. Lora also had a 1996 arrest for criminal possession of a controlled substance in the third degree that was resolved by a youthful offender adjudication and a sentence of five years' probation.  (PSR ¶ 40).  The PSR also discloses a 2014 arrest on a drug-related charge for which no additional information was available.  (*Id.* at ¶ 46).

and to possess with the intent to distribute 100 and more grams of heroin and one kilogram and more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  (Minute Entries for August 13, 2019).  The plea was entered pursuant to a written plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 210 to 262 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment. (PSR ¶ 6).

Sentencing in the matter took place on March 12, 2020.  (*See* Dkt. #178 (sentencing transcript ("Sent. Tr.")); Dkt. #177 (judgment)).  At the start of the sentencing proceeding, the Government proposed several edits to the PSR, including the insertion of language that "[f]rom at least 2013, Jose Lora facilitated, and at times managed, a drug-trafficking operation which involved at least five other participants," and that his organization trafficked in heroin as well as cocaine.  (Sent. Tr. 5-6).  The Court then questioned the parties about certain divergences between the factual narratives contained in the PSR and the sentencing submissions, principally on the issues of supervision and withdrawal from the conspiracy.  (*See, e.g.*, *id.* at 17-24, 28-37).

The Court adopted the Guidelines range calculated by the parties and the Probation Office, which was 210 to 262 months' imprisonment.  (Sent. Tr. 43).  After hearing from counsel for both sides and from Mr. Lora, the Court varied downward significantly to a term of 100 months' imprisonment, explaining in relevant part that:

I accept the statement by Mr. Wikstrom that Mr. Lora tried to leave this life, but it was imperfect, and that imperfection has legal consequences with it. He, of course, knew better than to put Mr. Moya in contact with his Mexican suppliers. He knew of Mr. Moya, and he knew of him as a drug dealer. And so I cannot say — or perhaps it's better to say it this way. You know, Mr. Lora may have told himself in his heart that he was getting out of the business, he nonetheless remained in and that is what brings him here today, and he is, in fact, liable for his conduct.

I am noting as well, a criminal history and other factors that are troubling. It is bad and disturbing that a five-year sentence for narcotics did not have the intended effect. It would seem that right after he got out of jail he resumed because, at least, for 2013 and 2014 it is that conduct that brings him before me today.

It is also troubling that he came back to the United States after being deported or removed from the United States. I do make a distinction between folks who come back to this country to remain with their families or to make money for their families in other countries and do not engage in criminal conduct, and those who, like Mr. Lora, come back and engage in very serious conduct.

And while he may not have been the principal beneficiary, or even the driving force behind Mr. Moya's drug needs, this is nonetheless very serious conduct. There is, as well, the issue of deterrence. I will accept the defense's argument that this is not a case in which specific deterrence is needed, but there is and there remains an issue of general deterrence, and as well, a recognition of the seriousness of the conduct.

*** 

And I am varying downward to a term of one hundred months' imprisonment. It is less than half of the applicable guidelines range. It is, by any metric, a significant sentence. It has specific and general deterrence qualities. It accurately reflects the seriousness of Mr. Lora's conduct in this case.

(*Id.* at 44-46). The day following the sentencing proceeding, the defense sought, and the Court granted, credit against his sentence for the time that Mr. Lora served in the Dominican Republic awaiting his extradition to the United States. (Dkt. #174-175).

Mr. Lora filed a counseled motion for compassionate release on February 9, 2022. (Dkt. #211). In brief, the defense argued that Mr. Lora should receive a reduction in sentence because (i) his medical conditions of hypertension and diabetes placed him "at high risk of Covid-19's worst consequences" (*id.* at 1); and (ii) Mr. Lora "has suffered through truly egregious conditions of confinement that have made service of his existing sentence more onerous and more punitive than the Court originally contemplated" (*id.*). The Court ordered a response from the Government (Dkt. #212), and the Government's letter brief in opposition was filed on February 25, 2022 (Dkt. #214).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has very recently summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant

6

> has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed … to provide the defendant with … correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons"). The court's discretion also includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

7

**DISCUSSION**

The parties agree, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied. (*See* Dkt. #214 at 4 ("In light of these representations [of defense counsel regarding efforts to serve Mr. Lora's compassionate release motion on the BOP], the Government does not dispute that the defendant has exhausted his claims.")). The Court thus proceeds to consider whether Mr. Lora has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has.

Mr. Lora begins by arguing that he is at a higher risk of having a more severe reaction if he were to contract the COVID-19 virus, because of the congregate setting, his existing medical conditions of hypertension and diabetes, and the alleged inability of prison staff to handle an outbreak of the virus. (Dkt. #211 at 2-4). Courts in this District have granted, and denied, compassionate release motions predicated on the existence of the COVID-19 pandemic and the risks of its transmission in prisons. *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) (collecting cases). This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases).

Mr. Lora has not made such a showing. It is true that both hypertension and diabetes are listed by the Centers for Disease Control and Prevention (the "CDC") as conditions that might increase an individual's chances of contracting severe illness from the COVID-19 virus. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed April 8, 2022); *For People Living in Prisons and Jails*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (accessed April 8, 2022). But the Court has reviewed with care Mr. Lora's BOP medical records, which make clear that Mr. Lora has worked successfully with BOP medical professionals to address his health issues. There is nothing to suggest that Mr. Lora has been unable to care for himself or has been neglected by BOP medical personnel. Instead, Mr. Lora appears to have received appropriate medical care while incarcerated. *See, e.g.*, *United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3-4 (S.D.N.Y. May 15, 2020) (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *see also United States* v. *Mood*, No. 19 Cr. 113 (VB), 2021 WL 242482, at *1 (S.D.N.Y. Jan. 25, 2021) (denying motion for compassionate release where defendant's "medical records reflect that his other health conditions have been well monitored and managed by BOP").

The Court also observes that Mr. Lora has received the COVID-19 vaccine, including a booster shot in December 2021. (Dkt. #214 at 4). Mr.

Lora's vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it further counsels against a finding of "extraordinary and compelling reasons." *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled.  Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.").

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities.  *See, e.g., United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020).  To that end, this Court has scrutinized the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed April 8, 2022), as well as the BOP's listing of confirmed cases among inmates and staff at each facility.  As of the date of this Order, the BOP has identified no current cases of COVID-19 among inmates or staff at FCI Jesup.  On balance, this Court concludes that the danger that Mr. Lora faces from infection with COVID-19, even accounting for his proffered medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate

release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Mr. Lora offers an additional basis for compassionate release that has more traction, namely, that the conditions of his confinement during the COVID-19 pandemic have resulted in a sentence that was more severe than the Court contemplated when it originally sentenced him in March 2020.  (*See, e.g.*, Dkt. #211 at 4 ("Mr. Lora's sentence has been vastly more punitive and thus a more severe sanction than the Court could have anticipated when it imposed sentencing.")).  The Court acknowledges that it did not foresee the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation), nor the public health risks faced by individuals like Mr. Lora who have spent the entirety of the pandemic in a carceral setting, nor the length of time over which these risks and deprivations would persist.  And in a prior decision resolving a compassionate release motion, the Court recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and

more punitive than would otherwise have been the case.'" *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.").  In short, the Court believes that pandemic-induced conditions of confinement *may* constitute "extraordinary and compelling" circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic.  It therefore proceeds to consider whether such relief is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).

The Court concludes that the factors set forth in 18 U.S.C. § 3553(a) — which include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant," *id.* § 3553(a)(1), (a)(2)(C) — counsel in favor of a limited reduction in sentence.  As the Court discussed with the parties at sentencing, Mr. Lora's criminal conduct was serious, and it followed both a prior conviction (with a substantial prison term) and a removal from this country.  The Court also recognizes that the sentence it imposed reflected a significant downward variance from the agreed-upon Guidelines range, a

variance that was imposed over the Government's objection. The fact remains, however, that that sentence was imposed with no awareness of the risks and restrictions that would characterize the ensuing two years. And the Court is pleased to learn of Mr. Lora's clean disciplinary record. Finally, the Court notes that Mr. Lora's term of imprisonment will end with his transfer to immigration authorities and his removal from this country. Considering all of these factors, the Court concludes that a modest additional sentence reduction of ten months is warranted, to account for the severity of the conditions of confinement.

## CONCLUSION

For the foregoing reasons, Defendant Jose Lora's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED IN PART, insofar as his sentence is modified to reduce the term of imprisonment on Count One from 100 months to 90 months. All other aspects of the sentence remain in full force and effect.

The Clerk of Court is directed to terminate the motion at docket entry 211.

SO ORDERED.

Dated: April 8, 2022
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge